UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE ANDRES ALEJANDRO SOZA, *et al.*, *Debtors.* § § § § | |
| ANDRES ALEJANDRO SOZA, *et al.*, *Appellants*, § § § § § § § § § § § | CIVIL ACTION H-06-0466 BANKRUPTCY CASE NO. 05-92131-H1-7 |
| vs. | |
| JOSEPH M. HILL, TRUSTEE, *Appellee.* | |

### MEMORANDUM AND ORDER

Andres Alejandro Soza and Mary Rachel C. Buzo appeal the bankruptcy court's order sustaining the trustee's objection to their annuity exemption and reclassifying the annuity as non-exempt property. Based on a careful review of the briefs, the record, and the applicable law, this court reverses the bankruptcy court's order for the reasons that follow.

### BACKGROUND

On October 13, 2005, one day prior to filing for bankruptcy, appellants Andres Alejandro Soza and Mary Rachel C. Buzo transferred $30,000 into a Mutual of Omaha Annuity through First Bank & Trust. Subsequent to filing for bankruptcy, appellants scheduled the annuity as exempt under section 1108.051 of the Texas Insurance Code. On January 4, 2006, the trustee filed his objection to the exemption. The trustee alleged that the conversion was "in fraud of creditors," and therefore, in accord with section 1108.053, the annuity should be classified as non-exempt property. On January 31, 2006, a hearing was held before the bankruptcy court. Considering only the pleadings, the court ruled in favor of the trustee on the basis that the conversion constituted constructive fraud.

#### ANALYSIS

This court has jurisdiction of the appeal under 28 U.S.C. § 158(a)(1). Determining whether an exemption applies to property that otherwise would be part of a debtor's bankruptcy estate is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(B); *In re Stonebridge Technologies, Inc.*, 430 F.3d 260, 267 (5th Cir. 2005) ("A proceeding is core 'if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy.'" (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). When reviewing a bankruptcy court's decision in a core proceeding, the district court functions as an appellate court and applies the standard of review generally applied in federal-court appeals. *See Webb v. Reserve Life Ins. Co.*, 954 F.2d 1102, 1103-04 (5th Cir. 1992). A bankruptcy court's findings of fact are reviewed for clear error, with proper deference to that court's opportunity to make credibility determinations. FED. R. BANKR. P. 8013; *In re McDaniel*, 70 F.3d 841, 842-43 (5th Cir. 1995). A finding of fact is clearly erroneous if, after review of all the evidence, the court is left with a firm and definite conviction that the bankruptcy court erred. *In re McDaniel*, 70 F.3d at 843. Legal conclusions, as well as mixed questions of law and fact are reviewed *de novo*. *Id.*; *In re Herby's Foods, Inc.*, 2 F.3d 128, 130 (5th Cir. 1993). Under *de novo* review, this court will make a judgment independent of that of the bankruptcy court and without deference to that court's analysis and conclusions. *See Coston v. Bank of Malvern*, 987 F.2d 1096, 1099 (5th Cir. 1992). The trustee as the objecting party bears the burden of proving, by a preponderance of the evidence, that the debtor is not entitled to an exemption. FED. R. BANKR. P. 4003(c).

This appeal presents two issues: (1) whether the bankruptcy court erred when it entered an order denying the debtors' exemption while refusing to take testimony and no evidence was

presented; and (2) whether the bankruptcy court erred when it denied the debtors' exemption on the basis that a transfer on the "eve of a bankruptcy" is in fraud of creditors under the constructive fraud standard. The court will first consider whether the bankruptcy court's failure to examine evidence outside of the pleadings was erroneous.

**1.     Refusal to Consider Evidence Outside of the Pleadings**

Appellants argue that the bankruptcy court erred when it entered an order denying the debtors' exemption while refusing to take testimony and no evidence was presented. The admission of evidence is committed to the sound discretion of the bankruptcy court, subject to review for abuse of that discretion. *See In re SGSM Acquisition Co.*, 439 F.3d 233, 239 (5th Cir. 2006); *In re Charter Co.*, 125 B.R. 650, 654 (M.D. Fla. 1991) (citing *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1374 (5th Cir. 1981)). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

In this case, appellants attempted to offer evidence that the money used to purchase the annuity was inherited and that entitlement to the money was not clearly established on the face of the will. The trustee objected to the admission of this evidence on the basis that the will's existence and ambiguity were being addressed for the first time at the hearing. The bankruptcy court sustained the objection, refusing to allow the appellants an opportunity to testify. Because evidence as to the source of the money used to purchase the annuity was offered for the first time at the bankruptcy hearing, the court's refusal to hear this testimony is not an abuse of discretion. *See In re Allied Physicians Group, P.A.*, 2004 WL 2965001, at *6 (N.D. Tex. 2004) (finding a bankruptcy court's

refusal to consider new evidence tendered for the first time at the hearing not an abuse of discretion because there was ample time to offer the evidence prior to the hearing).

**2.      Intent to Defraud Creditors**

Appellants argue that the bankruptcy court erred when it denied the debtors' exemption on the basis that a transfer on the "eve of a bankruptcy" is in fraud of creditors under the constructive fraud standard. At issue is whether section 1108.051, which provides an exemption for insurance and annuity benefits, applies and exempts the annuity from a debtor's bankruptcy estate. Section 1108.051 provides:

> (a) Except as provided by Section 1108.053, this section applies to any benefits, including the cash value and proceeds of an insurance policy, to be provided to an insured or beneficiary under:
> (1) an insurance policy or annuity contract issued by a life, health, or accident insurance company, including a mutual company or fraternal benefit society; or
> (2) an *annuity* or benefit plan used by an employer or individual . . . .

TEX. INS. CODE ANN. § 1108.051 (Vernon 2006) (emphasis added). However, "[t]he exemptions provided by Section 1108.051 do not apply to . . . a premium payment made in fraud of a creditor . . . ." *Id.* § 1108.053.

The appellants argue that their purchase of the annuity one day prior to filing for bankruptcy was not intentionally fraudulent. Therefore, appellants urge this court to reverse the bankruptcy court's denial of the annuity exemption. The trustee, in turn, asks the court to affirm the bankruptcy court's decision on the basis that the purchase was either a fraudulent transfer or on the theory that section 1108.053's "in fraud of creditors" may be found by a showing of constructive fraud on the part of a debtor. Neither section 1108.051 nor section 1108.053 speaks directly to whether a

purchase of an annuity one day prior to filing for bankruptcy is clearly "in fraud of creditors." Rather, section 1108.051 makes neither a distinction on when the annuity was purchased nor for how much money that annuity was purchased. Additionally, section 1108.053 does not instruct the court on whether something less than intent is sufficient to satisfy the "in fraud of creditors" condition to the exemption exception.

No court to date has examined section 1108.051 or section 1108.053. However, the predecessor to these sections, Insurance Code article 21.22, contained the same annuity exemption found today in section 1108.051, as well as the same "in fraud of creditors" exception that is found in section 1108.053.[1] Controlling Texas case law establishes that article 21.22 does not apply "when used as a shield to fraud." *Sun Life Assurance Co. of Canada v. Dunn*, 134 F. Supp. 2d 827, 836 (S.D. Tex. 2001) (citing *Marineau v. Gen. Am. Life Ins. Co.*, 898 S.W.2d 397, 402 (Tex. App.—Fort Worth 1995, no writ)). In *Marineau v. General American Life Insurance Company*, the court addressed whether an insurance policy that had been purchased with embezzled funds could be placed in constructive trust. *Id.* The court held that article 21.22 was not a bar to the imposition of a constructive trust because the insurance policy was obtained through fraudulent methods. *Id.* Therefore, Texas law precludes the application of article 21.22 to shield wrongful acts when doing so would deprive the rightful owner of her property. *Id.* In an earlier case, a Texas court examined whether sufficient evidence was presented at trial to establish that "premium payments were made in fraud of [a creditor]." *Leibman v. Grand*, 981 S.W.2d 426, 430 (Tex. App.—El Paso 1998, no

---

[1] "[A]ll money or benefits of any kind . . . to be paid or rendered to the insured or any beneficiary under any policy of insurance or annuity contract . . . shall . . . be fully exempt from all demands in any bankruptcy proceeding . . . ." TEX. INS. CODE ANN. art. 21.22, § 1 (Vernon 2001). However, "[t]he exemptions provided by Section 1 . . . do not apply to . . . premium payments made in fraud of creditors . . . ." *Id.* § 3.

5

pet.). More specifically, Leibman challenged the sufficiency of the evidence for purposes of showing that the annuity premium payments were made with intent to defraud the creditor. *Id.* In *Leibman*, the evidence demonstrated that following a North Carolina equitable distribution judgment and alimony arrearage judgment, the debtor, residing at the time in Texas, sold a boat and real property for $17,000 less than he had paid for them, and sold a vehicle for $6,000. *Id.* at 432. Moreover, within one month after the foreign judgments were registered in Texas, Leibman invested $35,000 of non-exempt funds into an exempt annuity, destroyed most of the records pertaining to these transactions, and later testified that he held no intention to pay the judgments. *Id.* Based on this evidence, the court held that intent to defraud the creditor was supported by legally sufficient evidence.

Another instructive case is *Hanson v. First National Bank*. In *Hanson*, the Eighth Circuit Court of Appeals decided whether a conversion on the eve of the bankruptcy of non-exempt property into property exempt under a South Dakota annuity exemption provision was done with intent to defraud creditors. *Hanson v. First Nat'l Bank*, 848 F.2d 866, 869-870 (8th Cir. 1988); *see also* S.D. CODIFIED LAWS § 58-12-4 (Michie 2006). The *Hanson* court found that bona fide sales of a vehicle and household goods to close family members on the eve of bankruptcy and the use of the proceeds to prepay the bankrupt's preexisting mortgage and to purchase life insurance policies in amounts permissible under relevant state law was not done with fraudulent intent. *Hanson*, 848 F.2d at 869-870. In affirming the bankruptcy court's decision, the Eighth Circuit agreed that there was no indicia of fraud: "the Hansons did not borrow money to place into exempt properties; they accounted for the cash they received from the sales; they had a preexisting homestead; and they did not obtain goods on credit, sell them, and then place the money into exempt property." *Id.* at 869.

In part, the Texas courts and the Eighth Circuit looked to the ownership interests in the non-exempt property used to acquire the exempt property. In *Marineau*, the money used to purchase an annuity was embezzled. In *Leibman*, the money used to purchase an annuity was obtained through below market value sales. But in *Hanson*, the annuity was purchased with money obtained through bona fide sales of non-exempt property. Collaterally, where the timeliness of the transfers was at issue, the courts examined whether the time of conversion implied a fraudulent objective. In *Leibman*, because the annuity was purchased after an adverse credit judgment was registered in Texas, the court characterized the timeliness of the purchase as being partly indicative of fraud. In *Hanson*, however, where no other evidence of fraud was available, the court made a clear statement that regardless of when the transfer was made, timeliness alone cannot support fraudulent intent. The Fifth Circuit agrees with the conclusion reached by the *Hanson* court. *In re Bowyer*, 916 F.2d 1056 (5th Cir. 1990) ("[T]he mere conversion of non-exempt property into exempt property on the eve of a bankruptcy [is] not itself such fraud as will deprive the bankrupt of his right to exemptions." (quoting 3 COLLIER ON BANKRUPTCY § 522.08[4] (15th ed. 1991))), *op. on reh'g*, 932 F.2d 1100 (5th Cir. 1991) (holding that the evidence supported a finding that sale of gold and use of debtor's savings to repair his exempt residence were not transfers made to defraud, hinder or delay creditors); *In re Reed*, 700 F.2d 986, 990 (5th Cir. 1983) (opining that conversion itself may be relevant where other evidence proves actual intent to defraud creditors).[2]

---

[2] While the trustee correctly contends that Fifth Circuit opinions regarding "eve of bankruptcy" transfers are expressed in the context of discharges under the Bankruptcy Act, the court finds the guidance appropriate in this case. Assuming that a showing of intent is necessary under the Texas statute, cases addressing intent to defraud under a similar provision in the Bankruptcy Act are relevant.

In the case at hand, there is no indicia of intentional fraud. The debtors, prior to filing for bankruptcy, purchased an annuity in the amount of $30,000. There is no evidence that the debtors purchased the annuity with borrowed money or embezzled money or money received from the sale of non-exempt property for less than its fair market value. Therefore, the court finds that there is no evidence that the appellants intended to defraud creditors by purchasing the annuity. Moreover, the court finds that the timeliness of an annuity purchase, standing alone, cannot support a finding of fraudulent intent under section 1108.053. The court reaches this conclusion in large part because the Texas exemption statute sets no time limit on how far in advance of bankruptcy an annuity must be purchased in order to be exempt. Ample support for the court's interpretation can also be found in the longstanding admonition of Texas courts that exemption statutes are to be liberally construed in favor of the claimant. The Texas Supreme Court has stated that "'our exemption laws should be liberally construed in favor of express exemptions, and should never be restricted in their meaning and effect so as to minimize their operation upon the beneficent objects of the statutes. Without doubt the exemption would generally be resolved in favor of the claimant.'" *Hickman v. Hickman*, 234 S.W.2d 410, 413 (1950) (quoting *Carson v. McFarland*, 206 S.W.2d 130, 132 (Tex. Civ. App.—San Antonio 1947, writ ref'd)); *see also Lozano v. Lozano*, 975 S.W.2d 63, 67 (Tex.

App.—Houston [14 Dist.] 1998, pet. denied).[3] Therefore, absent other indicia of fraud, a transfer on the eve of a bankruptcy alone does not establish fraudulent intent under section 1108.053.

**3.     Other Legal Fraud**

The trustee urges this court to affirm the bankruptcy court's decision on the basis that the purchase was either a fraudulent transfer or on the theory that section 1108.053's "in fraud of creditors" may be found by a showing of constructive fraud on the part of a debtor. Section 1108.053 does not direct the court on whether something less than intent is sufficient to satisfy the "in fraud of creditors" condition to the exemption exception.

*A.     Fraudulent Transfer*

Neither the Fifth Circuit nor any Texas court has spoken on the issue of whether something less than fraudulent intent may suffice to unwind a conversion similar to that in this case. The trustee, however, tries to persuade this court that intent is unnecessary. Rather, the trustee argues that section 1108.053 is a fraudulent transfer statute and that the debtors' conversion of non-exempt cash into an exempt annuity one day before filing for bankruptcy is constructive fraud. It is unnecessary for this court to conclusively determine whether section 1108.053 is a fraudulent transfer statute. It will suffice to conclude that even assuming that the trustee's contention as to the

---

[3]   In *Matter of Fernandez*, 855 F.2d 218 (5th Cir. 1988), the Fifth Circuit court observed that Texas's rule of liberal construction had led one Texas court to conclude that
> a dray is a "wagon" . . . an automobile is a "carriage" . . . a piano is "household and kitchen furniture" . . . [and] the word "horse" includes a bridle and saddle, as well as the shoes on its feet and the rope and martingales around its neck. . . . And this spirit of liberal construction has been indulged until [the courts] have held that an unbroken colt is a "horse" . . . and even that a mule, removed as he is one degree by consanguinity, is nevertheless a "horse." Furthermore, in their effort to extend the humane and beneficial character of [their] exemption statute, [Texas courts] have become so blind to every other consideration that they have looked upon the mule's father and pronounced him—voice, ears, and all—a horse.

*Id.* at 219 (quoting *Patterson v. English*, 142 S.W. 18, 19 (Tex. Civ. App.—Amarillo 1911, no writ)).

9

statute's classification is correct, his assertion that this conversion constituted a fraudulent transfer must fail. Under Texas law:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due . . . .

TEX. BUS. & COM. CODE ANN. § 24.005 (Vernon 2006).[4] Because this court has earlier determined that there was no indicia of actual intent to hinder, delay, or defraud any creditor,[5] the remaining inquiry concerns the bona fides of the debtor's purchase. Appellant received an annuity in exchange for a $30,000 payment. There is no evidence that appellant paid the $30,000 "without receiving a reasonably equivalent value in exchange." Therefore, the conversion of $30,000 cash into an annuity is not a fraudulent transfer. *Cf. First Nat'l Bank v. Hooper*, 104 S.W.3d 83, 84 (Tex. 2003) (holding that evidence establishing a conveyance by an insolvent debtor of a deed of trust lien to secure a valid antecedent debt, a transfer where the underlying property's value far exceeded the debt secured, is insufficient to support a claim for constructive fraud under the Texas Uniform Fraudulent Transfer Act absent evidence that the transferee intended to assist the debtor in evading his creditors).

---

[4] Determination of whether a transfer is fraudulent requires an analogous analysis under the Bankruptcy Code. *See* 11 U.S.C. § 548.

[5] A conversion of non-exempt property into exempt property on the eve of bankruptcy is insufficient proof of actual intent to hinder or delay creditors. *See, e.g.*, *United States v. Robb*, 42 Collier Bankr. Cas. 2d (MB) 303 (N.D. Tex. 1999).

### B.     *Constructive Fraud*

Finally, the trustee, relying on the bankruptcy court's conclusion, argues that the conversion amounted to constructive fraud. "Fraud" refers to "an act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed, when the breach causes injury to another . . . ." *Chien v. Chen*, 759 S.W.2d 484, 494 (Tex. App.—Austin 1988, no writ) (emphasis omitted) (footnote omitted) (citing *Russell v. Industrial Transp. Co.*, 258 S.W. 462 (Tex. 1924); *Kellum v. Smith*, 18 Tex. 835 (1857)).  "Constructive fraud" is the breach of a legal or equitable duty that the law declares fraudulent because it violates a fiduciary relationship.  *Shwiff v. Priest*, 650 S.W.2d 894, 902 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.); *Carnes v. Meador*, 533 S.W.2d 365, 370 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.). However, "[a] debtor-creditor relationship does not give rise to such a duty, nor will mere subjective trust alone create a fiduciary relationship." *Victoria Bank & Trust Co. v. Brady*, 779 S.W.2d 893, 902 (Tex. App.—Corpus Christi 1989), *aff'd in part, rev'd in part*, 811 S.W.2d 931 (Tex. 1991); *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962) (declining to find a fiduciary relationship where the evidence showed that the debtors had a long-standing business and personal relationship with the creditor, who was a director, officer and shareholder in their corporation, instead holding that the proof did not support anything more than the existence of a debtor-creditor relationship); *see also Consolidated Bearing & Supply Co. v. First National Bank*, 720 S.W.2d 647 (Tex. App.—Amarillo 1986, no writ) (finding proof of a long-standing banker-depositor relationship insufficient to establish the existence of a fiduciary relationship); *Winston v. Lake Jackson Bank*, 574 S.W.2d 628, 628-29 (Tex. Civ. App.—Houston [14th Dist.] 1978, no writ) (finding no fiduciary relationship between debtor and creditor despite extensive business and personal prior dealings, including the creditor's president being the debtor's

personal and business financial advisor). The trustee did not offer evidence the bankruptcy court could have construed as proof of a fiduciary relationship. The relationship between the appellants and their creditors was nothing more than that of debtor and creditor.

Undoubtably, section 1108.053 is ambiguous in that its language calls for exceptions to transactions that are "in fraud of creditors." The court does not disagree that a conversion which amounts to constructive fraud can be deemed a transfer "in fraud of creditors." However, the court finds that the facts in this case do not constitute constructive fraud and that this transaction was not "in fraud of creditors."

## Conclusion

The bankruptcy court's ruling sustaining the trustee's objection to the debtor's claimed annuity exemption and reclassifying the annuity as non-exempt property is REVERSED.

Signed on November 17, 2006, at Houston, Texas.

_____
Gray H. Miller
United States District Judge